Herman BERMAN, ind. and t/a Scott Construction Company,

v.

Seymour HERRICK and Abraham Kamber, ind. and t/a Lewis Tower Building.

Civ. A. No. 29164.

United States District Court
E. D. Pennsylvania.

March 8, 1962.

Nathan Lavine and Adelman & Lavine, Philadelphia, Pa., for plaintiff.

Louis J. Goffman and Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for the defendant.

LUONGO, District Judge.

In January, 1961, Herman Berman, a citizen of Pennsylvania, instituted an action against Herrick and Kamber, citizens of New York. Berman is a general contractor. His claim is that defendants, owners of the Lewis Tower Building, which was then in a state of disrepair, conceived a scheme to effect improvements and modernization of the Lewis Tower Building at the expense of Berman and others who furnished labor and materials. Defendants' scheme, it is alleged, was to lease the building to a thinly capitalized corporation, LTB Company, under which the latter was required to make substantial rental payments and, in addition, to make extensive improvements to the building at LTB's expense. The defendants controlled LTB, and, knowing that LTB would not derive sufficient income from the operation of the building to pay the rent and to pay for the improvements without investment of additional capital, caused additional capital to be withheld and as a result LTB Company was rendered insolvent. It was part of defendants' scheme to bring about insolvency, to terminate LTB's lease by reason thereof and to recover possession of the building, which they did, after the improvements were made, but with substantial balances remaining unpaid therefor.

Berman further alleged that the total cost of the improvements and modernization of the Lewis Tower Building amounted to approximately $300,000.00; that Berman's work totalled $160,000.00 of which approximately $54,000.00 remained unpaid, for which he demanded payment. Berman instituted the action against defendants on his own behalf as well as on behalf of others similarly situated who supplied labor and materials for the repair, improvement and modernization of the building.

Service of Berman's complaint was made on defendants, but since the institution of the suit, defendants have sold the Lewis Tower Building and are no longer subject to personal service of process within the jurisdiction of this Court. On November 17, 1961, Modern Floors, Inc., General Electric Supply Co. and Hotpoint, Divisions of General Electric Company, Jenkins Elevator and Machine Co., Inc., and Westinghouse Electric Supply Co., Division of Westinghouse Electric Company, petitioned for leave to intervene in the action pursuant to Rule 24(b), F.R.Civ.P. 28 U.S.C. The petition to intervene is the matter before the Court.

The complaint of the proposed intervenors, although in somewhat more detail than Berman's, is founded basically upon the same scheme. Each of the proposed intervenors furnished materials and performed services for which balances remain due and unpaid.

Defendants oppose the motion to intervene on the grounds that:

(1) common questions of fact or law are not present;

(2) proposed intervenors do not meet federal jurisdictional requirements; and

(3) defendants are not now subject to service of process within the jurisdiction of this Court.

▆▆ As to the first point raised by defendants in opposition to intervention under Rule 24(b) governing permissive intervention, the Court has discretion to permit intervention when the applicant's claim and the main action have a question of fact or law in common. Berman and the proposed intervenors all bottom their claims on the same alleged scheme. The factual and legal issues involved in the proof of that scheme provide the main frame work of the trial. That Berman and each of the proposed intervenors may have a separate contract or agreement on which to base the claim for the amount of his or its individual recovery in no way changes that basic

frame work. We conclude, therefore, that a common question of law and of fact are presented.

▮ Defendants' second argument, that the proposed intervenors do not meet jurisdictional requirements, is based on the fact that none has alleged its citizenship, consequently there is no basis for finding diversity and, in addition, the claim of one (Westinghouse Electric Company) is for less than the jurisdictional amount. Berman's complaint was filed on his own behalf and on behalf of those similarly situated in an apparent attempt to bring it within the terms of Rule 23(a)(3), a spurious class action. In that regard the complaint falls short. A sine quo non for a class action under Rule 23 appears to be that the "persons constituting a class are so numerous as to make it impracticable to bring them all before the court". No such allegation is made here. Indeed the contrary is made to appear when the size of the claims of Berman and the proposed intervenors (in excess of $100,000.00), together with the amount received by Berman in part payment ($105,000.00) and the unspecified amounts received by the proposed intervenors in part payment, are considered against the total amount involved in the modernization of the building ($300,000.00 according to Berman's complaint, or $275,000.00 according to the complaint of the proposed intervenors). It would appear, therefore, that Berman and the proposed intervenors, a very small number, represent substantially all of the purported "class". In the absence of an allegation of a number of claimants so large as to make it impracticable to bring them all before the Court, we cannot regard this as a class action within the purview of Rule 23.

Since we do not regard this as a class action the proposed intervenors must stand or fall on Rule 24(b). There is a conflict of authority as to whether each intervenor under Rule 24(b) must qualify both as to diversity and jurisdictional amount. Professor Moore indicates that jurisdictional requirements must be met by each of the claimants, stating the Rule as follows, 4 Moore's Federal Practice ¶ 24.18, at page 137:

> "Intervention in an *in personam* action under a discretionary right must be supported by independent grounds of jurisdiction, except when the action is a class action."

The contrary view is indicated in Wichita Railroad & Light Company v. Public Utilities Commission of the State of Kansas, 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124 (1922), decided before the adoption of the Rules. It was there held that jurisdiction, once acquired by a District Court on the ground of diversity of citizenship, is not divested by a subsequent change in the citizenship of the parties. Mr. Chief Justice Taft said, at page 54, 43 S.Ct. at page 53:

> "Much less is such jurisdiction defeated by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties."

The Wichita decision was followed, subsequent to the adoption of the Rules, in Northeast Clackamas County Electric Co-operative, Inc. v. Continental Casualty Company, 221 F.2d 329 (9th Cir. 1955) where it was stated at page 333,

> "The jurisdiction fully and properly established in the first instance by the service and filing of Co-op's complaint was not divested by the proper intervention of Contractor. With the parties properly before the district court it had jurisdiction to hear and determine all contentions between them which could be raised and asserted under the rules of procedure."

The opposing views were exhaustively considered in the Northeast Clackamas case and the narrow one, as to diversity, was expressly rejected. As to jurisdictional amount, in State of Maryland for

Use of Scott v. Taylor, 140 F.Supp. 801 (D.C.D.Md.1956) it was held that where the original claim was sufficiently large to meet the jurisdictional requirement, the intervenor's need not be of the requisite amount.

We regard as more persuasive the authorities holding that intervenors need not meet jurisdictional requirements as to diversity and amount in controversy so long as the court's jurisdiction has been established in the original suit. To require each intervenor to meet the jurisdictional requirements as to diversity and amount, especially when combined with defendants' contention that intervention is not permissible where defendants are no longer subject to personal service of process, would rob Rule 24 (b) of all meaning and purpose. In effect, defendants' argument is that intervention should not be permitted unless each proposed intervenor could institute his own individual suit, i. e., each establish diversity of citizenship, requisite jurisdictional amount, and each be able to effect personal service. Such a requirement would virtually eliminate all distinction between Rule 24(b) (intervention) and Rule 42(a) (consolidation). Considered in that light, Rule 24(b) would serve very little purpose other than, perhaps, to effect some minor saving in fees for service of process. We cannot ascribe such a limited purpose to the rule makers in promulgating Rule 24(b).

We recognize that there is a great potential for abuse in the view we have taken. It is possible that suits may be instituted whose real purpose is to eliminate jurisdictional barriers for proposed intervenors who might be the real parties in interest. But since intervention under 24(b) is committed to the court's discretion, the courts have the power to control or eliminate such abuses wherever they are found to exist.

We have already commented briefly on defendants' third point, that intervention is not permissible since defendants are no longer subject to service of process. Intensive research reveals a dearth of authority on the subject. Prior to the adoption of the Rules intervention under these circumstances was not permissible. Ex parte Indiana Transportation Company, 244 U.S. 456, 37 S.Ct. 717, 61 L.Ed. 1253 (1917). Professor Moore indicates (4 Moore's Federal Practice, ¶ 24.20) that the holding in Indiana Transportation has not survived the adoption of the Rules and that intervention is now permissible. The support for that conclusion is found, according to Professor Moore, in the provision in Rule 5(a) requiring that "pleadings asserting new or additional claims for relief must be served upon parties *in default for failure to appear* in the manner provided for service of summons; the implication being that in all other cases service as under Rule 5 is sufficient". Rule 5 authorizes service of every pleading subsequent to the original complaint upon counsel.

Defendants have urged that Judge Van Dusen, in Lasch v. Antkies, 161 F. Supp. 851 (D.C.E.D.Pa.1958) held that Rule 5(a) does not support the validity of service of an amended complaint upon an attorney of record where the defendant is not subject to service of process. In that case, however, service of the complaint in the original action was made pursuant to the provisions of the Securities Act (15 U.S.C.A. § 77v) which permitted service upon the defendant anywhere he could be found. Defendant there was in fact served outside the jurisdiction of this Court. We think that the following quotation from Judge Van Dusen's opinion, at page 853, particularly that portion to which we have supplied emphasis, furnishes indirect support for the view that service of an amended complaint can be made, in the instant case, upon defendants even though they are not now subject to personal service.

"The rule does permit service of an amended complaint upon counsel, but no authority has been furnished

which shows the operation of the rule where the amended complaint contains an entirely different cause of action *which could not have been properly served originally by the method used in serving the original complaint.*" (Emphasis supplied.)

█ In the instant case, the defendants were served within this jurisdiction on Berman's complaint. The amended complaint on behalf of the proposed intervenors could have been properly served originally by the method used in serving the original complaint. While the issue is not crystal clear because of the lack of direct authority, we consider it consonant with logic and with the spirit of the Rules to permit the intervention notwithstanding defendants are no longer subject to personal service.

█ Defendants have urged that we are prevented from allowing intervention in this action by Rule 82 which provides that the "Rules shall not be construed to extend * * * the jurisdiction of the United States district courts * * *" and by the pronouncement in Kelly v. United States Steel Corporation, 284 F. 2d 850 (3rd Cir. 1960) that recent amendments to 28 U.S.C. § 1332(c) were adopted in an effort to reduce the number of cases coming to Federal Courts on the ground of diversity of citizenship only. We point out only that the jurisdiction of the District Court would not be "extended" in any way by the grant of intervention. The jurisdiction of this court has been established by Berman's action. To deny intervention would not "reduce the number of cases" coming to the Federal Courts. The case is here. The only question before us is whether to permit the proposed intervenors to present their claims in the already existing Berman action in which will be tried the identical factual and legal issues on which their claims are based.

There is no question that convenience, as well as economy of time, will be served by granting the intervention. Moreover, in our view, it is preferable that all of these claims be litigated in one trial rather than several trials in different jurisdictions with possible contradictory results. We see no good reason to withhold the exercise of our discretion to permit intervention under Rule 24(b).