**John Lewis PIERSON, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 75–218.**

United States District Court,
D. Delaware.

March 31, 1976.

Charles S. Crompton, Jr., and Leonard S. Togman, Potter, Anderson & Corroon, Wilmington, Del., for plaintiff; James S. Eustice, and Stephen D. Gardner, Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, of counsel.

W. Laird Stabler, Jr., U. S. Atty., Wilmington, Del., D. Patrick Mullarkey, Tax Div., Dept. of Justice, Washington, D. C., for United States of America.

James M. Tunnell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for Intern. Tel. and Tel. Corp.; John H. Schafer, III, and David J. Cynamon, Covington & Burling, Washington, D. C., of counsel.

### OPINION

MURRAY M. SCHWARTZ, District Judge.

Presently before the Court for decision is a motion by International Telephone & Telegraph ("ITT") which seeks to intervene as a party-plaintiff pursuant to F.R.Civ.Proc. 24. ITT's motion is phrased in the alternative,[1] urging that ITT is entitled to intervene as a matter of right under Rule 24(a) or permissively under Rule 24(b). The United States opposes intervention under either branch of the rule.

Prior to discussion of the legal issues surrounding intervenor's motions, some development of the factual background of this litigation is in order. Plaintiff John Lewis Pierson is a former shareholder of the Hartford Fire Insurance Company ("Hartford") who challenges the Commissioner of Internal Revenue's March 15, 1974 revocation of

---

1. ITT originally moved to intervene under the permissive intervention provision of Rule 24(b). Following an exchange of briefs in which the Government raised a substantial obstacle to ITT's intervention under Rule 24(b), ITT expanded its motion to contemplate intervention as of right pursuant to Rule 24(a).

a series of earlier tax rulings which indicated that the ITT-Hartford merger qualified as a tax-free reorganization under Int. Rev.Code § 368(a)(1)(B). 26 U.S.C. 368(a)(1)(B). Although the facts surrounding the merger, issuance of the earlier rulings and the revocation are somewhat complex and of importance to one seeking to fully understand the procedural context of the instant motion, there is no need to provide greater detail here since the factual background has previously been fully developed. *See, ITT v. Alexander,* 396 F.Supp. 1150 (D.Del.1975).

For purposes of this motion, it is sufficient merely to indicate that Mr. Pierson can be described as friendly to ITT's interests since both seek to overturn the Commissioner's revocation of the prior rulings. Not only has ITT agreed to indemnify any former Hartford shareholder who may incur tax liability as a result of the merger now being considered a taxable event, but it has provided counsel of ITT's choosing to represent any former Hartford shareholder who wishes to contest the revocation's legality. In addition, ITT has agreed to pay all legal costs and fees incurred in connection with such shareholder litigation. However, one proviso of such representation is that any shareholder seeking to utilize ITT's chosen counsel must bind himself to the legal position that the merger "was and is a tax-free reorganization for federal income tax purposes."[2] Not surprisingly, this prerequisite to ITT-funded representation has not proved to be a stumbling bloc since any former Hartford shareholder contesting the Commissioner's determination that the merger was a taxable event is virtually constrained to adopt that position. Notwithstanding ITT's complete indemnification of all former Hartford shareholders,

*ITT v. Alexander,* 396 F.Supp. 1150, 1154 (D.Del.1975), which in reality deprives them of any true economic stake in the outcome, some 950 such shareholders have availed themselves of ITT's offer and filed petitions in the Tax Court, in addition to the action brought in this Court by Mr. Pierson.[3]

I. *Intervention of Right Under Fed.R. Civ.Proc. 24(a)(2)*

ITT urges that it is entitled to intervention of right in the instant case under Fed. R.Civ.Proc. 24(a)(2).[4] While addressing itself to the intervention requirements postulated by Rule 24(a), ITT also argues that the Court has already favorably determined its right to intervene in a friendly taxpayer suit in *ITT v. Alexander, supra.* This argument is without merit and can be summarily treated in that the Court in its earlier opinion did not rule on a question not then before it, but rather merely indicated that ITT had the right to *seek* intervention in a suit of this nature. *ITT v. Alexander, supra* at 1167–8.

Rule 24(a)(2) erects three requirements that must be satisfied prior to a finding that a person or entity is entitled to intervene of right. First, the putative intervenor must demonstrate that it claims an interest relating to the transaction or property forming the subject-matter of the main action. Second, the applicant's interest must be of a nature that disposition of the pending action may, as a practical matter, impair or impede its ability to protect that interest. *See, Trbovich v. UMW,* 404 U.S. 528, 537–8, 92 S.Ct. 630, 635, 30 L.Ed.2d 686, 694 (1972). However, even if both these requirements are established, intervention may not be granted unless the Court also finds that the applicant's interest is not adequately represented by existing

---

**2.** Affidavit of Pierson's Counsel, Docket No. 12, ¶ 5.

**3.** *Id.,* ¶ 4.

**4.** Rule 24(a) provides:
   "(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional

right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

parties. *See, Trbovich v. UMW, supra; United States v. IBM,* 62 F.R.D. 530, 534 (S.D.N.Y.1974).

■■ Even assuming *arguendo* that ITT satisfies the two initial requirements for intervention of right under Rule 24(a)(2), its application for intervention must be denied because its interest is adequately represented by an existing party, Mr. Pierson. The burden of proof, especially in a risk of non-persuasion sense (as distinguished from the burden of going forward), is upon one seeking intervention. *See, Ordnance Container Corp. v. Sperry Rand,* 478 F.2d 844 (5th Cir. 1973); *Edmondson v. Nebraska ex rel. Meyer,* 383 F.2d 123, 126 (8th Cir. 1967). With respect to the adequate representation issue, the applicant also bears the burden of proof, notwithstanding occasional judicial commentary to the contrary. *Trbovich v. UMW, supra* at 538 n. 10;[5] *Ordnance Container Corp. v. Sperry Rand, supra. Cf. U. S. v. IBM, supra. See also, Peterson v. United States,* 41 F.R.D. 131 (D.Minn. 1966). *But see, Nuesse v. Camp,* 385 F.2d 694, 702 (D.C.Cir.1967); *Smuck v. Hobson,* 132 U.S. App.D.C. 372, 408 F.2d 175, 181 (1969). However, the significance of allocating the burden of persuasion is limited because this case does not present a situation where the inadequate representation issue is in equipoise, since the Court finds that ITT has failed to make *any* showing that its interests are not adequately represented.

■ A determination of the adequacy of representation issue must necessarily focus upon "a comparison of the interests asserted by the applicant for intervention and the existing party." *U. S. v. IBM, supra* at 535. *See,* Shapiro, "Some Thoughts on Intervention Before Courts, Agencies and Arbitrators," 81 *Harv.L.Rev.* 721, 740–8 (1968); 7A *Wright & Miller, supra,* § 1909 at 524. Perhaps the most useful formulation of an "interest-analysis" test is that propounded by Professors Wright & Miller, *Cf. U. S. v. IBM, supra,* who initially classify an intervention applicant's interest as being adverse, similar or identical to that of an existing party. If an applicant's interest is either *not represented at all by existing parties* or if all existing parties have interests *adverse* to the proposed intervenor, the representation is deemed to be inadequate, and, assuming compliance with the other requirements of Rule 24(a), intervention should be granted. 7A *Wright & Miller, supra. See, U. S. v. IBM, supra* at 536. If the applicant possesses an interest *similar* to that of an existing party "a discriminating judgment is required on the circumstances of the particular case, but he ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." 7A *Wright & Miller, supra* at 524. However, where the interests of an existing party and a proposed intervenor are identical, "a compelling showing should be required to demonstrate why this representation is not adequate." *Id.*

Applying this mode of analysis to the instant motion it is clear at the outset that ITT's interests cannot under any stretch of the imagination be considered adverse to those of Mr. Pierson. Both seek to overturn the Commissioner's revocation of the

---

5. Applicants urge that their burden in this context is a minimal one, relying upon dictum in *Trbovich v. UMW, supra.* However, that dictum cannot be considered controlling in the instant case. *Trbovich* involved an intervention motion by a party whose interests in the underlying litigation were inconsistent with the existing party purportedly representing his interest. In such cases the policies served by intervention are promoted by utilization of a reduced burden on the issue of inadequate representation. *Cf.* 7A Wright & Miller, *Federal Practice and Procedure,* § 1909 at 521–524. Thus *Trbovich* is distinguishable from the instant case where the interest of the applicant and existing plaintiff are precisely identical. In such cases courts have utilized various tests which place a fairly stringent burden upon those seeking intervention. *See, e. g., Stadin v. Union Electric Co.,* 309 F.2d 912, 919 (8th Cir. 1962), *cert. denied,* 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963); *U. S. v. IBM, supra* at 536.

Alternatively, if the *Trbovich* dictum does apply, *see Commonwealth of Pennsylvania v. Rizzo,* 530 F.2d 501, at 505 (1976), the Court holds that ITT has not met even a minimal burden because of its failure to elucidate any facts that demonstrate its interests are inadequately represented.

earlier favorable tax rulings treating the Hartford-ITT merger as a tax-free reorganization. Moreover, ITT's proposed complaint-in-intervention seeks no independent relief but merely joins in plaintiff's claim for a refund of tax liabilities incurred as a result of the latter Internal Revenue action. While an argument can be made that ITT's interest is merely similar to Pierson's and not identical because ITT has indemnified all former exchanging Hartford shareholders and thus its concerns are broader than the extent of Mr. Pierson's personal tax liability, the Court is convinced after analysis that the asserted interests of the intervention applicant and plaintiff are identical.[6] Although ITT may be ultimately concerned with the full extent of its indemnification liability, it seeks here to litigate nothing more than Mr. Pierson's tax deficiency. Further, in the current stage of development of the law of res judicata and collateral estoppel a decision of this Court favorable to Mr. Pierson would not collaterally estop the Commissioner from relitigating the issues presented here in the Tax Court suits brought by former Hartford shareholders. *See, ITT v. Alexander, supra, citing Divine v. Commissioner,* 500 F.2d 1041 (2d Cir. 1974).

Once it is clear that the interests of ITT and Pierson are identical, it becomes necessary to determine what type of compelling showing must be made in order to demonstrate inadequacy of representation. Some courts have indicated the existence of a presumption of adequate representation in cases presenting intervention applicants whose interests were identical to those of an existing party. *Ordnance Container Corp. v. Sperry Rand,* 478 F.2d 844, 845 (5th Cir. 1973); *Ionian Shipping Co., Ltd.,* 426 F.2d 186 (2d Cir. 1970). Generally however, most federal courts have utilized a three-prong test first articulated in *Stadin v. Union Electric Co.,* 309 F.2d 912 (8th Cir. 1962), *cert. denied,* 373 U.S. 915, 83 S.Ct.

1298, 10 L.Ed.2d 415 (1963), to examine adequacy of representation in an identical interest context. *U. S. v. IBM, supra. See,* 7A *Wright & Miller* § 1909 at 529. *See, e. g., Peterson v. United States,* 41 F.R.D. 131 (D.Minn.1966). *Cf. Nuesse v. Camp,* 128 U.S.App.D.C. 172, 385 F.2d 694, 703 (1967). Under the *Stadin* test "inadequacy of representation is or may be shown by proof of collusion between the representative and an opposing party, by the representative having or representing an interest adverse to the intervener, or by the failure of the representative in the fulfillment of his duty." *Stadin v. Union Electric Co., supra,* 309 F.2d at 919. Similarly a leading commentator on Rule 24 has indicated that "when the applicant is making no claim of his own but is seeking to assert the same position as one who is already a party and whose interests precisely coincide with his, the issue of adequacy should be, as Mr. Justice Stewart suggests, limited to questions of competence, collusion and bad faith."[7] *Shapiro, supra* at 748. (footnotes omitted)

Applying these standards it is immediately clear that no questions of collusion or adversity of interests are presented in the instant case. Nor has ITT questioned the competence of the counsel it selected to represent Mr. Pierson. Rather, ITT appears to be arguing that the ethical duties owed to Mr. Pierson by his counsel will preclude fulfillment of their duty as ITT's surrogate. This argument is without merit. The manner in which Mr. Pierson's counsel was "nominated" by ITT and subsequently retained by Mr. Pierson leaves no doubt that ITT has guaranteed Mr. Pierson will assert positions consistent with ITT's view of the merger as a tax-free reorganization. In fact, an express pre-condition to ITT's provision of counsel for former Hartford shareholders was that they agree not to take any position other than that previously embraced by ITT, namely that the merger

---

**6.** ITT appears to concede that its legal interests are identical with Mr. Pierson's.

**7.** At least one court has recently expressed its approval of this formulation in an analogous situation. *U. S. v. IBM, supra,* 62 F.R.D. at 539.

was a tax-free reorganization.[8] The imagined ethical conflict thus cannot arise because in retaining counsel nominated by ITT, Mr. Pierson agreed that the scope of that representation could not include the assertion of legal arguments at odds with the ITT position regarding the applicability of Section 368(a)(1)(B).

In view of the identity of interests between Mr. Pierson and ITT, it is necessary that there be a "concrete showing of circumstances in the particular case that make the representation inadequate." 7A *Wright & Miller* at 529. *See, Arthur G. McKee & Co. v. Gulf & Western Industries, Inc.,* 52 F.R.D. 332 (D.Del.1971). No such showing has been made. At oral argument, in addition to its ethics argument, ITT urged that a situation could arise where, for example, Mr. Pierson's counsel chose not to pursue discovery of certain information desired by ITT. A simple difference as to litigation tactics is insufficient to satisfy the inadequate representation requirement. *See,* 7A *Wright & Miller* at 524, n. 92 and cases therein cited. *Cf. Commonwealth of Pennsylvania v. Rizzo,* 530 F.2d 501 at 505 (3d Cir. 1976), *citing U. S. v. Board of School Commissioners,* 466 F.2d 573, 575 (7th Cir. 1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973). Further, such a conflict has not occurred nor has there been a showing of specific circumstances which suggest even a possibility of any such disagreements. If an intervention applicant whose interests were identical to those of an existing party could satisfy the adequate representation issue merely by positing that some question might arise on which different positions could be taken, then, almost by definition, no representation could be adequate except where the existing party agrees not to adopt any litigation tactics not in accord with the putative intervenor's wishes. Given the natural disinclination of most litigants to make such

abdicatory concessions, such a doctrine would render the adequate representation requirement a nullity notwithstanding the Advisory Committee on Civil Rules' 1966 decision in revising Rule 24 to retain that requirement. *See generally,* Kaplan, "Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)," 81 Harv.L.Rev. 356, 403 (1967).

Finally, ITT raises the possibility that because Mr. Pierson has, as a result of the ITT indemnification, no real economic stake in this litigation, he might be prone to compromise or settle this case "in consideration of adjustment of future tax problems of his own."[9] It is not clear given the ironclad scope of retention pre-condition that Mr. Pierson could ever adopt such a position without first discharging his current counsel. More importantly there is nothing to suggest that settlement is even a possibility. Since some "concrete showing of circumstances" or actual *facts* giving rise to inadequacy is necessary in the current posture of this case, that failure alone is sufficient to answer ITT's contention. *See, McKee & Co. v. Gulf & Western, supra.* In addition, the adequacy of representation issue is to be determined by a litigation's "condition at the time of the application to intervene." *Kaplan, supra* at 403. Since nothing to date suggests that Mr. Pierson has exhibited any indicia of nonfeasance, and since the Court is unwilling to assume the existence of improper motives or bad faith on plaintiff's part, ITT's motion to intervene under Rule 24(a) must be denied. However, since intervention can occur at virtually any stage, *see, e. g., Smuck v. Hobson,* 132 U.S.App.D.C. 372, 408 F.2d 175, 181 (1969), there will be a sufficient opportunity for ITT to protect its interests by attempting to intervene should any of its now mythical "parade of horribles" come to pass.

---

8. See Docket No. 12, ¶ 5. This was accomplished by having ITT's nominated counsel refuse in advance to represent "any former Hartford shareholder desirous of taking a different position." *Id.*

9. Docket No. 11 at 6.

## II. *Permissive Intervention Under Fed. R.Civ.Proc. 24(b)*

■ ITT has also moved for leave to intervene permissively under Rule 24(b).[10] In general Rule 24(b)(2)[11] provides a simple test for determining when a court may exercise its discretion to permit intervention: does the applicant present a claim or defense which shares a factual or legal question with the previously existing claim. Fed.R.Civ.Proc. 24(b)(2). *See generally,* 3B Moore, *Federal Practice* ¶ 24.10[2] (1974 ed.). However, satisfaction of this test does not automatically result in the allowance of permissive intervention. Instead, that decision is committed to sound judicial discretion, *Brewer v. Republic Steel,* 513 F.2d 1222 (6th Cir. 1975); *Francis v. Chamber of Commerce of the United States,* 481 F.2d 192 (4th Cir. 1973), and must include an appraisal of any potential delay or prejudice to the original parties that might result from permitting the intervenor's claim to be heard. Fed.R.Civ.Proc. 24(b).

### A. *The Requirement of an Independent Jurisdictional Basis*

■ In addition, federal courts have developed another requirement for putative permissive Rule 24(b) intervenors, namely that their claim be supported by independent jurisdictional grounds. *See, e. g., Beach v. KDI Corp.,* 490 F.2d 1312 (3d Cir.

1974); *Babcock & Wilcox Company v. Parsons Corp.,* 430 F.2d 531 (8th Cir. 1970).[12] While Rule 24 itself is silent as to such a prerequisite, that cannot end the inquiry since Rule 82 specifically provides that the Federal Rules of Civil Procedure "shall not be construed to extend or limit the jurisdiction of the United States district courts * * *." Fed.R.Civ.Proc. 82. *See* 7A *Wright & Miller,* § 1917. *But see, TPI Corp. v. Merchandise Mart of South Carolina, Inc.,* 61 F.R.D. 684 (D.S.C.1974). This problem does not arise with respect to intervention of right under Rule 24(a) because ancillary jurisdiction exists with respect to the class of claims and parties that fall within that branch of the rule. 7A *Wright & Miller, supra* at 590–1. *See, Babcock & Wilcox Co. v. Parsons Corp., supra.* However, it is obvious that the strictures of Rule 82 are vitiated by permitting the intervention of a party whose claim is not otherwise within the jurisdictional cognizance of federal district courts.

■ The Government in opposing ITT's permissive intervention motion, has argued that no jurisdictional basis exists under which ITT's claim may be heard in a federal court and therefore *Beach v. KDI Corp.* precludes this Court from granting the instant application. ITT counters that *Beach* is not applicable to its motion and relies upon *Indian Refining Co. v. Dallman,*

---

**10.** Rule 24(b) provides that:

"(b) *Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

**11.** No argument has been, or could be, made that the provisions of Rule 24(b)(1) have any applicability to the instant litigation.

**12.** This is clearly the prevailing view of the federal courts. *See, Reedsburg Bank v. Apollo,* 508 F.2d 995 (7th Cir. 1975); *Beach v. KDI Corp., supra; Warren G. Kleban Engineering Corporation v. Caldwell,* 490 F.2d 800 (5th Cir. 1974); *Francis v. Chamber of Commerce of the U. S., supra; Babcock & Wilcox Co. v. Parsons Corp., supra; Toles v. United States,* 371 F.2d 784 (10th Cir. 1967); *Hunt Tool Co. v. Moore, Inc.,* 212 F.2d 685 (5th Cir. 1954); *Green & White Construction Co. v. Cormat Construction Co.,* 361 F.Supp. 125 (N.D.Ill.1973); *U. S. v. Local 638, Enterprise Association,* 347 F.Supp. 164 (S.D.N.Y.1972); *Isbrandtsen v. SS Kokoh Maru,* 263 F.Supp. 784 (S.D.N.Y.1966); *Hunter v. Southern Indemnity Underwriters,* 47 F.Supp. 242 (D.Ky.1942); 3B Moore, *Federal Practice,* ¶ 24.18[3] at 781–2.

31 F.Supp. 455 (S.D.Ill.1940) and *Chalmers v. United States,*[13] 43 F.R.D. 286 (D.Kan. 1967) for the proposition that one who indemnifies a party protesting its federal tax liabilities has the right to intervene as a party plaintiff in the indemnitee's refund suit.

In urging that *Beach* is inapposite to the current controversy, ITT takes the position that the requirement of an independent jurisdictional base in Rule 24(b) intervention situations is only applicable in diversity cases. There are two prime difficulties with this argument. First, the requirement has not been limited to diversity cases, but has instead been applied in a variety of jurisdictional contexts, including federal question jurisdiction. *See, Warren G. Kleban Corp. v. Caldwell, supra* (federal question jurisdiction); *Francis v. Chamber of Commerce, supra* (federal question jurisdiction); *Toles v. U. S., supra* (condemnation by the federal government); *U. S. v. Local 638, Enterprise Ass'n, supra* (Title VII action by government); *Isbrandtsen v. SS Kokoh Maru, supra* (admiralty jurisdiction); *Hunter v. Southern Indemnity Underwriters, supra* (jurisdiction pursuant to federal securities acts).

Secondly, there is no analytic basis for restricting the independent jurisdiction requirement to diversity cases. Federal district courts are of limited jurisdiction, the scope of which is within the control of Congress pursuant to Article III, § 1 of the U. S. Constitution. *See, Sheldon v. Sill,* 49 U.S. (8 How.) 441, 448, 12 L.Ed. 1147, 1151 (1850). When a matter is not properly within its jurisdiction either because Congress has not deemed to exercise its Article III, § 1 powers to confer jurisdiction over such a class of cases or because the matter does not present a justiciable controversy to which the federal judicial power extends under Article III, § 2, it makes no difference that the matter appears to be more akin to a federal question case than a diversity suit. In either context, the federal court has no jurisdiction. Applying these principles to intervention applications under Rule 24(b), it is clear that jurisdictional limitations with respect to the claims asserted by the intervenor are equally restrictive irrespective of whether the original suit presents a federal question or is a suit in diversity. The problem is likely to be less common in federal question cases because an intervenor whose claim is sufficiently related to the original claim for purposes of Rule 24(b) will in most instances itself be presenting a federal question under 28 U.S.C. § 1331. However, the fact that the problem is less acute in non-diversity intervention cases cannot be used as a basis for failing to require an independent jurisdictional basis for a permissive intervenor's claim in non-diversity matters.

## B. *Independent Jurisdictional Basis of ITT's Claim*

This Court has previously held that Congress had exercised its Article III, § 1 power to withhold a portion of the judicial power cognizable under Article III, § 2 so as to preclude entertainment of the ITT claim under the Declaratory Judgment Act. *ITT v. Alexander, supra.* Presentation of the ITT claim in an intervention context does not alter that result. The plaintiff Pierson is suing the government under 28 U.S.C. § 1346(a)[14] which provides federal district courts with jurisdiction over taxpayer refund suits. Since ITT has incurred and paid no taxes of its own stemming from

---

**13.** *Indian Refining, supra* and *Chalmers, supra* were cited by the Court in *ITT v. Alexander, supra* at 1167–8, as authority for the proposition that ITT could *seek* intervention in a district court refund suit filed by a former Hartford shareholder.

**14.** 28 U.S.C. § 1346(a) provides:
"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

"(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws; . . . "

the Commissioner's revocation of the previous non-taxable treatment of the Hartford merger, this jurisdictional basis is foreclosed to it. *Jorrie v. Imperial Investment Co.,* 355 F.Supp. 1088 (W.D.Tex.1973). Moreover, ITT's complaint-in-intervention seeks no independent relief but merely joins in Pierson's claim for relief which seeks a refund of taxes. Since ITT has paid no taxes and thus has no opportunity to seek a refund, it has, in essence, sought a declaratory judgment on the legality of the Commissioner's revocation. *See, Falik v. United States,* 343 F.2d 38, 43 (2d Cir. 1965); *De Julis v. Alexander,* 393 F.Supp. 823 (D. Wyo.1975); *Jorrie v. Imperial Investment Co., supra; Biggs. v. United States,* 326 F.Supp. 749 (E.D.Ky.1971). This is because in deciding Pierson's entitlement to a refund, this Court must, by definition, determine and declare the legality of the Commissioner's revocation. As to ITT however, the judicial task ends with the determination of rights and is thus the equivalent of a declaratory judgment. Although Congress has generally provided district courts with jurisdiction over suits arising under the internal revenue laws, 28 U.S.C. § 1340, it has also provided various barriers to the institution of certain types of suits by taxpayers or those connected with taxpayers. One of those is found in the Declaratory Judgment Act, 28 U.S.C. § 2201,[15] which prevents federal courts from issuing declaratory judgments with respect to federal taxes.[16] As a result, ITT's claim, which is nothing more than an attempt to secure a declaratory judgment, is outside the jurisdictional cognizance of the federal district courts.[17] Accordingly, ITT's petition to intervene permissively under Rule 24(b) must be denied on the ground that its claim does not possess an independent jurisdictional basis.

ITT's reliance upon *Indian Refining* and *Chalmers* cannot alter this result. In *Chalmers* a testator's beneficiaries were allowed to intervene in a refund suit under 28 U.S.C. § 1346(a) by the executrix of the testator's estate. Although the court in *Chalmers* noted that the intervenors, who had no tax liability of their own and sought no refund, did not fall within the boundaries of section 1346(a) and were thus lacking a jurisdictional basis, it held that such a basis was not required when the court had jurisdiction over the original suit. However, the sole authority cited for this proposition, *Berman v. Herrick,* 30 F.R.D. 9 (E.D. Pa.1962), was expressly repudiated less than a year after *Chalmers* was decided when the judge who authored *Berman* retracted his earlier view "and returned to the prevailing rule that independent jurisdiction is required for discretionary intervention."

---

15. 28 U.S.C. § 2201 provides that:

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. . . . ."

16. *See, Lewis v. Sandler,* 498 F.2d 395 (4th Cir. 1974); *Hunsucker v. Phinney,* 497 F.2d 29 (5th Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *In re Statmaster Corporation,* 465 F.2d 978 (5th Cir. 1972); *West Chester Feed & Supply Co. v. Erwin,* 438 F.2d 929 (6th Cir. 1971); *In re Wingreen Company,* 412 F.2d 1048 (5th Cir. 1969); *Mitchell v. Riddel,* 402 F.2d 842, 846 (9th Cir. 1968), *cert. denied,* 394 U.S. 456, 89 S.Ct. 1223, 22 L.Ed.2d 415 (1969) and cases therein cited; *Falik v.*

United States, supra; U. S. v. Teitelbaum, 342 F.2d 672 (7th Cir. 1965); DeJulis v. Alexander, supra; Vietnam Veterans Against the War v. Voskuil, 389 F.Supp. 412 (E.D.Mo.1974); Krouse v. U. S. Gov't. Treasury Dep't., 380 F.Supp. 219 (C.D.Cal.1974); Laing v. U. S., 364 F.Supp. 469 (D.Vt.1973), aff'd, 496 F.2d 853 (2d Cir. 1974), rev'd on other grounds, 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976), 44 U.S.L.W. 4035; White v. U. S., 363 F.Supp. 31 (N.D.Ill.1973); Jorrie v. Imperial Investment Co., supra; Field v. U. S., 340 F.Supp. 175, (S.D.N.Y.), aff'd, 486 F.2d 1393 (2d Cir. 1972); Rose v. American Airlines, Inc., 331 F.Supp. 77 (N.D.Ill.1971); Biggs v. U. S., supra; Hamilton v. U. S., 309 F.Supp. 468 (S.D.N.Y.1969), aff'd, 429 F.2d 427 (2d Cir. 1970), cert. denied, 401 U.S. 913, 91 S.Ct. 881, 27 L.Ed.2d 812 (1971); St. Louis Park Medical Center v. Lethert, 286 F.Supp. 271 (D.Minn.1968).

17. It is assumed ITT will not be denied due process. *See ITT v. Alexander, supra* at 1163.

3A Moore, *Federal Practice*, ¶ 24.18[3]. *See, Olivieri v. Adams*, 280 F.Supp. 428 (E.D.Pa. 1968). *See also*, Note, 48 Iowa L.Rev. 530 (1963). Therefore, *Chalmers* cannot be utilized as authority, especially in view of the nearly unanimous contrary position taken on the independent jurisdiction issue by numerous other courts. Similarly, *Indian Refining*, which authorized the permissive intervention of a taxpayer's indemnitor in the taxpayer's refund suit, cannot be considered sound authority since it never treated the jurisdictional requirement issue. Moreover, notwithstanding the affirmance of *Indian Refining*, the Court of Appeals for the Seventh Circuit has recently adopted the independent jurisdiction requirement for intervention claims, *Reedsburg Bank v. Apollo*, 508 F.2d 995 (7th Cir. 1975), thus vitiating *Indian Refining*.

An Order will be entered denying ITT's motions to intervene of right under Rule 24(a) and permissively under Rule 24(b).