**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**EASTERN AIR LINES, INC., Defendant.**

**Nos. 79–5943 CIV EBD, 80–1713 CIV EBD and 80–2165 CIV EBD.**

United States District Court,
S.D. Florida.

Jan. 7, 1983.

David L. Slate, General Counsel, Washington, D.C., Irving Miller and John M. Meisburg, Jr., Miami, Fla., for plaintiff EEOC.

Richard Magurno, Ella K. Solomons, Miami, Fla., for defendant Eastern.

Judith L. Oakes, Oakes & Kanatz, St. Paul, Minn., for plaintiff Patricia Gorman.

Charles W. Rankin and Edward T. Dangel, III, Dangel & Sherry, Boston, Mass., for intervenors.

## ORDER DENYING MOTION TO INTERVENE

EDWARD B. DAVIS, District Judge.

This matter is before the Court on the motion of fifteen charging parties[1] who seek leave to intervene as party plaintiffs in this action by the EEOC against Eastern Air Lines for violations of § 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (hereinafter ADEA). Up to this time these fifteen would-be intervenors were included within the group of twenty-three charging parties on whose behalf EEOC originally commenced suit against Eastern. Both the EEOC and Eastern vigorously oppose intervention in this litigation which has, after some two and a half years, culminated in a consent decree.[2] By Order dated June 25, 1982 this Court stayed implementation of the consent decree to permit consideration of the motions to intervene and vacate the decree. A hearing was held on July 8, 1982 at which evidence and argument on the motion to intervene was presented. In view of the evidence and argument, the extensive briefs and correspondence filed in this matter, and the entire record in this cause, it is

ORDERED AND ADJUDGED that the Motion to Intervene is Denied.

The starting point leading to this determination is necessarily F.R.Civ.P. 24(a) which provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, to succeed in their motion to intervene the charging parties must demonstrate not only that their motion to intervene is timely made and that they have a stake in this litigation which would be impaired but for their intervention, but also that their interest is not adequately represented by the existing parties.

### TIMELINESS

The EEOC and Eastern join, arguing the charging parties' motion is untimely. We are guided to the conclusion that the motion is untimely when the facts of this case are applied to the timeliness test set forth in Stallworth v. Monsanto Co., 558 F.2d 257 (5th Cir.1977). In Stallworth the fifth circuit extracted four factors from the

---

1. The motions and other papers filed in this matter refer to sixteen charging parties who seek intervention. By letter dated November 3, 1982 one of those named charging parties made clear that she did not wish to join the others seeking leave to intervene.

2. The decree was approved by the Court on March 29, 1982 prior to its perusal by the charging parties, and has not yet been entered as a final judgment.

Supreme Court's and its own prior decisions which must be considered in determining the timeliness of a motion to intervene. These factors are:

1. the time before seeking intervention during which the would-be intervenor knew, or reasonably should have known, of his interest in the case,

2. the prejudice to existing parties suffered as a result of the would-be intervenor's failure to seek intervention upon recognizing his interest in the case,

3. the prejudice suffered by the would-be intervenor if his intervention is denied,

4. other unusual circumstances.

It is undisputed that the charging parties were aware of their interest in this case long before the consent decree they seek to vacate was constructed. The record discloses that nineteen of the twenty-three charging parties were named in the EEOC's complaint against Eastern filed in December 1979; three additional parties were named in the 1980 amended complaint; a single additional charging party filed separate suit in 1981.

That they knew of the pendency of the case is irrelevant, argue the would-be intervenors, since until the decree was shown to them they had no knowledge that the EEOC had failed to protect their interest. Their interest, the argument goes, became apparent only after the decree's terms were known, and therefore under *Stallworth's* first factor they have timely filed.

We do not read *Stallworth's* first factor as sanctioning this conclusion. Although the *Stallworth* court noted that "making knowledge of the pendency of the litigation the critical event would be unsound." *Id.* at 265, it did so because "many individuals who excusably failed to appreciate the significance of a suit at the time it was filed would be barred from intervening to protect their interests when its importance became apparent to them later on." *Id.* As the record demonstrates, the charging parties did appreciate the significance of the suit, as evidenced by their frequent commu-

nications with EEOC lawyers bringing that suit; [3] any failure to intervene earlier in this litigation is therefore not excusable. Moreover, as the appellate panel stated in *Stallworth,* there are "two important purposes of Rule 24: to foster economy of judicial administration and to protect nonparties from having their interests adversely affected by litigation conducted without their participation." *Id.* While the charging parties were not formal parties in this action they clearly did participate in the progress of the case, and unlike the successful intervenors in *Stallworth,* are neither strangers to the suit, nor opposing parties with hostile interest.

With respect to *Stallworth's* second timeliness factor, it is clear that the existing parties would be prejudiced by intervention due to the would-be intervenor's delay. The parties have encountered considerable expense in litigating this case and have spent several years in reaching a fair conclusion. This prejudice to the parties must be balanced against *Stallworth's* third factor, which contemplates the prejudice to the would-be intervenor if intervention is denied and which "permits varying degrees of harm . . . to be taken into consideration." *Id.* at 266.

The denial of intervention here potentially produces two effects, depending upon the choice of the individual charging parties. Those releasing Eastern of liability may partake in the recovery afforded by the consent decree; no prejudice will result in this event. Alternatively, those declining to release Eastern from liability may pursue their remaining civil remedies. The delay and expense effected by such recourse is in equipoise with the prejudice to the existing parties if intervention were granted. Thus, on balance with the second factor, the third factor does not tip the scales in favor of the charging parties.

No unusual circumstances have been proffered which militate denying or granting intervention, and consequently, the Court does not reach *Stallworth's* fourth factor in its determination that the motion is untimely.

**3.** *See,* affidavit of John Meisburg Jr., dated April 27, 1982.

## SUBSTANTIAL INTEREST

It has not been, nor could it be, seriously argued that the would-be intervenors lack a substantial interest in the subject matter of this litigation. Since the federal statute being sued upon by EEOC mandates legal and equitable relief [4] for victims of age discrimination who can prove employer liability, it is obvious that the would-be intervenors have an actual financial stake in the outcome of this suit.

Along with its statutory expression indicating age discriminatees are to be made whole, Congress declared that an aggrieved employee's private right of action shall terminate [5] upon the Secretary's [6] suit to enforce that employees' right. It is noteworthy, and not insignificant, that when Congress saw fit to limit an individual discriminatee's private right to bring an action it did not expand the individual's right to enter the litigation by granting an unconditional right to intervene as Rule 24(a)(1) allows. While not the dispositive element in this question of intervention, the statutory scheme at least superficially justifies the conclusion that Congress had high regard for the agency authorized to promote age discriminatees' rights and did not wish to dilute that agency's power to litigate, even at the expense of a particular discriminatee's private action. Evidently, regardless how substantial the interest of any single litigant, that interest must yield to the larger interest served by EEOC when it proceeds on behalf of that litigant.

## ADEQUACY OF REPRESENTATION

The would-be intervenors argue they were not adequately represented.[7] As charging parties they assisted EEOC in its suit against Eastern, providing that agency with information relevant to Eastern's alleged discriminatory hiring practices. Despite this assistance, the argument goes, EEOC lawyers failed to protect these charging parties' interests in negotiating a consent decree with Eastern, and even concealed the terms of the decree despite promises to make settlement offers known prior to acceptance. Moreover, the settlement package is claimed to be wholly inadequate since it eliminates the charging parties' rights to back pay and liquidated damages, and provides for reinstatement for only half of the otherwise eligible charging parties. The would-be intervenors contend if intervention were allowed, and if Eastern's liability were established at trial, full back pay and other relief could be attained.

In support of its argument that intervention should be allowed where representation may be inadequate the would-be intervenors cite *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) wherein the Court permitted a union member leave to intervene for the limited purpose of presenting evi-

4. 29 U.S.C. § 626(b) provides *inter alia:*
   The provisions of this chapter shall be enforced... In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

5. 29 U.S.C. § 626(c) provides:
   Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided,* that the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this chapter.

6. The Secretary's role is now borne by the EEOC.

7. The federal courts are not in accord as to which party bears the burden of persuasion on the adequacy of representation issue.
   The use of the term "unless" in the 1966 amendment puts the burden of proving adequacy of representation on the party opposing intervention. *Smuck v. Hobson,* 132 U.S.App.D.C. 372, 408 F.2d 175, 181 (1969); *Nuesse v. Camp,* 128 U.S.App.D.C. 172, 385 F.2d 694, 702 (1967). *Cf. Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538, n. 10, 92 S.Ct. 630 [636, n. 10], 30 L.Ed.2d 686, 694, n. 10 (1972).
   *T.P.I. Corp. v. Merchandise Mart of South Carolina,* 61 F.R.D. 684, 688 (D.C.S.C.1974).

dence and argument in the Secretary of Labor's suit to set aside a union election. The district court had not reached the question of Rule 24(a) intervention, but confined its analysis to the LMRDA which provides that the exclusive post-election remedy is suit brought by the Secretary. The Court found the LMRDA did not preclude intervention, and after applying Rule 24(a) to the facts in the case, thought that "there (was) sufficient doubt about the adequacy of representation to warrant intervention." *Id.* at 538, 92 S.Ct. at 636.

In its discussion concerning the "adequacy of representation" the Court noted that the Secretary's dual role in vindicating union members' rights and protecting the public interest "may not always dictate precisely the same approach to the conduct of the litigation. Even if the Secretary is performing his duties, broadly conceived as well as can be expected, the union member may have a valid complaint about the performance of 'his lawyer.'" *Id.* at 538, 539, 92 S.Ct. at 636. In dictum the Court noted the applicant for intervention has a minimal burden in showing that his interest may be inadequate.[8] The Court declined to illuminate the showing which prompted it to find intervention was warranted in that case.

In contrast to litigation at hand, wherein intervention is sought for purposes of overturning a consent decree two and one half

years in the making, *Trbovich* permitted intervention for the narrow purpose of presenting evidence and argument in a case still being actively litigated. Taken as a whole, it is clear in *Trbovich* the Court drew a careful line beyond which intervention would not be allowed, properly declining to permit the intervenor's usurpation of the Secretary's discretionary "screening" function. Thus, the Secretary's judgment concerning the nature of the claims to be pressed was not circumvented by the intervening party.

At the heart of the instant controversy lies the would-be intervenors' dissatisfaction with a consent decree negotiated by EEOC as a product of EEOC's judgment and discretion. As was mentioned above, EEOC's participation as plaintiff in an age discrimination suit cuts off the discriminatee's right to bring a private action. In this posture, the EEOC resembles the Secretary who had the exclusive right to sue in *Trbovich*. We read the proviso of 29 U.S.C. § 626(c) as implicitly and ultimately imbuing EEOC with a screening function to determine the scope and substance of its age discrimination suits, a function which under *Trbovich* can not be invaded by well-meaning intervenors. In this context no distinction need be drawn between EEOC's claim stating and claim settling functions, both of which are invested with a heavy

---

**8.** In *Pierson v. United States,* 71 F.R.D. 75, 78 n. 5 (D.Del.1976) the court stated:

Applicants urge that their burden in this context is a minimal one, relying upon dictum in *Trbovich v. UMW, supra.* However, that dictum cannot be considered controlling in the instant case. *Trbovich* involved an intervention motion by a party whose interests in the underlying litigation were inconsistent with the existing party purportedly representing his interest. In such cases, the policies served by intervention are promoted by utilization of a reduced burden on the issue of inadequate representation. *Cf.* 7A Wright and Miller, Federal Practice and Procedure § 1909 at 521–524. Thus *Trbovich* is distinguishable from the instant case where the interest of the applicant and existing plaintiff are precisely identical. In such cases, courts have utilized various tests which place a fairly stringent burden upon those seeking intervention. *See,* e.g. *Stadin v. Union Electric*

*Co.,* 309 F.2d 912 (8th Cir.1962), *cert. denied* 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963); *U.S. v. IBM* [62 F.R.D. 530 (S.D.N.Y. 1974)], supra at 536.

Alternatively, if the *Trbovich* dictum does apply, see *Commonwealth of Pennsylvania v. Rizzo,* 530 F.2d 501 at 505 (1976), the Court holds that ITT has not met even a minimal burden because of its failure to elucidate any facts that demonstrate its interests are inadequately represented.

We find the charging parties' interests are identical to EEOC's interest. Moreover, even if it be said the interests diverge to some degree the charging parties have not demonstrated facts establishing this interest is inadequately represented. Thus, the "minimal burden" on intervention enunciated in *Trbovich* is not the legal standard here; alternatively, even if it were, the failure to adduce evidence on this point renders the argument futile.

dose of discretion. *Trbovich* does not mandate a contrary result.

As a general proposition,

The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interest of the present parties. If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented. If his interest is identical to that of one of the present parties, or if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate. Finally, if his interest is similar to, but not identical with, that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, but he ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee.

7A Wright & Miller, Federal Practice and Procedure § 1909, at 524 (1972).

In *Trbovich* and other "inadequacy of representation" cases courts are called upon to divine whether representation may be inadequate. Here we are afforded a retrospective rather than prospective view, and may peruse the fruits of EEOC's representation—the consent decree—negotiated on behalf of those now seeking to intervene. As will be seen, evaluating the decree in light of the overall circumstances shows the decree to be adequate. We extrapolate from this that representation was adequate.

The would-be intervenors have made no showing which compels a different conclusion. The decree is not charged to be a product of collusion between EEOC and Eastern, nor have the would-be intervenors adduced facts establishing or even suggesting EEOC's interest is adverse to their own. That EEOC must bear a public as well as private concern does not equate with an adverse interest. Finally there has been no claim that EEOC's representation has been less than diligent; to the contrary, the record discloses that EEOC lawyers were praised by the charging parties for efforts on their behalf.[9]

In substance, those desiring intervention here charge EEOC "failed to assert (their) interests as vigorously and effectively as (they) would have, had they been parties to this litigation." We adopt the approach taken by the seventh circuit, agreeing that the fact the would-be intervenors "would have been less prone to agree to the facts and would have taken a different view of the applicable law does not mean that (EEOC did) not adequately represent their interest in the litigation." *United States v. Bd. of School Comm'r,* 466 F.2d 573, 575 (7th Cir.1972). The consent decree here, as in *School Comm'r,* represents a legal consequence derived from applying the law to the facts. That the would-be intervenors would have argued for a different application, without more, does not justify intervention.[10] To determine, on this ground that intervention is proper would render the adequacy of representation requirement a nullity; this we hesitate to do.[11]

9. *See e.g.,* Anne (Griffith) Pritchard's letter to Federico Castalis of the EEOC, commending EEOC Attorney Meisburg's efforts on her behalf; Maria Cristina Demello's letter commending EEOC Attorney Lefko for his effort and sound advice.

10. Applicants' contention that EEOC was unsuccessful in representing their interests is not dispositive of this adequacy of representation dispute. We agree with the third circuit's view in *Commonwealth of Pennsylvania v. Rizzo,* 530 F.2d 501, 506 (3rd Cir.1976), in which the court stated:

We also reject any implied contention that representation becomes inadequate whenev-

er the representative is unsuccessful in urging a position: adequate representation may or may not be successful representation.

11. If an intervention applicant whose interests were identical to those of an existing party could satisfy the adequate representation issue merely by positing that some question might arise on which different positions could be taken, then, almost by definition, no representation could be adequate except where the existing party agrees not to adopt any litigation tactics not in accord with the putative intervenor's wishes. Given the natural disinclination of most litigants to make such abdicatory concessions, such a doctrine

The fairness of the consent decree,[12] in the final analysis, justifies the conclusion that representation was adequate. By those of its terms inuring exclusively for the benefit of the charging parties,[13] the decree provides employment as flight attendants to half the charging parties who will sign Eastern's release of liability form and who meet Eastern's published weight, height and vision standards. Eastern also agreed to hire an additional charging party as an agent. Seniority rights are also provided for those hired, with the effective date tied to the date the charging party filed her action. Monetary relief consisting of $30,000 in cash and $35,000 in travel credits is available for equal division among the charging parties releasing Eastern from liability. While these provisions may be viewed by the charging parties as less than complete victory, it is nonetheless a fair settlement which avoids the expense, delay and uncertainty of a trial and possible appeal.[14]

Fairness is not susceptible of determination in a vacuum, but must be evaluated in light of the strength of the charging parties' case as well as other relevant circumstances. It must be remembered that Eastern has at no time admitted liability for violations of the ADEA, and specifically denied liability in the consent decree itself. After studying the depositions and exhibits in this cause it becomes apparent that liability is not clear cut. The most provocative evidence against Eastern on the liability issue was the Flight Attendant Recruiter's Handbook (1972) which states "candidates should normally be under the age of 28." However, there were sufficient alternative grounds upon which Eastern could legitimately refuse employment as flight attendant to any of the charging parties, thereby rebutting the charge that refusal to hire was based on age. For example, Nancy Lopez twice sought and was refused employment as a flight attendant. While she alleges this denial was premised on her age, there is competent evidence [15] showing her personality rendered her an unfit candidate. There is no evidence suggesting this rationale was pretextual.

would render the adequate representation requirement a nullity notwithstanding the Advisory Committee on Civil Rules' 1966 decision in revising Rule 24 to retain that requirement.
*Pierson v. United States,* 71 F.R.D. 75, 80 (D.Del.1976).

**12.** *See United States v. City of Miami, Fla.,* 664 F.2d 435, 441 (5th Cir.1981) where the court stated:
[T]he requisite court approval is merely the ratification of a compromise. The court must ascertain only that the settlement is "fair, adequate and reasonable."
At note 13, the court described the trial court's duty:
The seventh circuit has stated the trial court's duty succinctly:
The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties. Objectors must be given reasonable notice and their objections heard and considered. *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights,* 616 F.2d 1006, 1014 (7th Cir.1980).

In the case *sub judice* those seeking intervention had a full and fair opportunity to voice their objections at a hearing on the motion to intervene. The decision that the consent decree is fair is based on the facts adduced at the hearing and on record in the case, the stage at which the settlement was made and the nature of the issues involved. Moreover, we are influenced also by the nature of this age discrimination litigation and the purpose the decree serves.

**13.** The decree also provides for an affirmative action program by Eastern under which members of the protected age group would realize substantial benefits. These public purpose provisions have not been challenged by the would-be intervenors.

**14.** The avoidance of delay, expense and uncertainty of trial encourages settlement by consent decree as a general proposition. The court further notes settlement by consent decree is the favored method for resolving suits in the employment discrimination field.

**15.** *See, i.e.,* the deposition of Carol E. Sheil, formerly a flight attendant for Eastern, at 66 *et seq.,* wherein she noted Ms. Lopez was a "cold individual" who was "difficult to talk to" and who was "snobbish, indifferent, aloof."

Evidence also indicates the charging parties failed to mitigate their damages [16] by obtaining employment after being rejected by Eastern. This bears on the availability of back pay which the consent decree did not award and of which the would-be intervenors complain.[17]

Thus, evaluating the merits without deciding the ultimate facts, it becomes evident that the charging parties' case was not clear cut. This condition was, no doubt, reflected by the provisions of the consent decree and particularly by the monetary award provided. Another factor which doubtless influenced the monetary award is the economic instability in the airline industry over the last two years. Airlines have borne a heavy toll during the present economic recession, and this circumstance had to impact on EEOC's ability to extract a more generous settlement figure from Eastern.[18] When present day fiscal woes are tallied and considered in conjunction with EEOC's less than clear cut case, we are led to the inescapable conclusion that the consent decree was fair and resulted from EEOC's adequate representation.

For all these reasons the Motion to Intervene is Denied.

---

**16.** *See, i.e.,* EEOC Questionnaire to charging party Shirley Bradbury showing she had no earnings from 1976–1980 and was a housewife during that period. EEOC Questionnaire to Mildred Crocker shows she was self-employed from January until October in 1976 during which she took no salary; she worked part time as a temporary hostess and cashier from July until September in 1977 and was next employed from July until December in 1978 as a bank's travel clerk earning $3,317.63, which position she left to become a foster parent.

**17.** *See, Sangster v. United Air Lines,* 633 F.2d 864 (9th Cir.1980) (decision to award back pay is within court's discretion).

**18.** *See, i.e.,* affidavit of Richard P. Magurno dated April 27, 1982, and of Ella K. Solomons, detailing the voluntary concessions made by current Eastern personnel in order to avoid job lay-offs.